```
 1              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF MISSISSIPPI
 2                   SOUTHERN DIVISION


 3
    JOSEMANY JEAN FRANCOIS                      PLAINTIFF
 4
    V.                         CIVIL ACTION NO: 1:24CV57
 5
    JACKSON COUNTY, MISSISSIPPI, ET AL.        DEFENDANTS
 6

 7                 HEARD IN CONJUNCTION WITH

 8

 9  JOSEMANY JEAN FRANCOIS                      PLAINTIFF

10  V.                         CIVIL ACTION NO: 1:24CV63

11  WENDY NEVELS                                DEFENDANT
   _____
12
              TRANSCRIPT OF OMNIBUS HEARING
13
          BEFORE HONORABLE ROBERT P. MYERS, JR.
14            UNITED STATES MAGISTRATE JUDGE

15                 FEBRUARY 20, 2025

16       DAN M. RUSSELL, JR., UNITED STATES COURTHOUSE
                  GULFPORT, MISSISSIPPI
17  _____

18

19

20

21                    COURT REPORTER:

22             Kati Vogt, RPR, RMR, RDR, CRR
                  Official Court Reporter
23     U.S. District Court, Southern District of Mississippi
                  2012 15th Street, Suite 403
24             Gulfport, Mississippi  39501
                     (228) 563-1780
25             kati_vogt@mssd.uscourts.gov
```

1                          A P P E A R A N C E S

2

3      REPRESENTING THE PLAINTIFF:

4          JOSEMANY JEAN FRANCOIS, PLAINTIFF PRO SE
           Jackson County Adult Detention Center
5          65 Bruce Evans Drive
           Pascagoula, Mississippi  39567
6

7

8

9      REPRESENTING DEFENDANTS JACKSON COUNTY, MISSISSIPPI; SERGEANT
       MCCOY; WENDY NEVELS:
10
           ANNA JULIET RICHARDSON, ESQ.
11         Office of the Board Attorney - Jackson County
           P.O. Box 998
12         Pascagoula, Mississippi  39568

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **THE COURT:**  We're here in the matter of Francois.

2          **THE PLAINTIFF:**  Yes, sir.

3          **THE COURT:**  Francois versus Jackson County,

4    Mississippi, et al., Cause Number 1:24CV57, as well as

5    Francois versus Nevels, Cause Number 1:24CV63.  We're here for

6    an omnibus hearing that was noticed according to the docket.

7          Good morning to you, Mr. Francois.

8          **THE PLAINTIFF:**  Good morning to you.

9          **THE COURT:**  Am I pronouncing your last name

10   correctly?

11         **THE PLAINTIFF:**  Yes, sir.

12         **THE COURT:**  All right.  Mr. Francois, I've asked you

13   to join us here this morning as a result of a lawsuit that you

14   have filed.  We're going to go over your entire lawsuit, both

15   of them --

16         **THE PLAINTIFF:**  Yes, sir.

17         **THE COURT:**  -- this morning.  Have you ever been to a

18   Spears hearing or a screening hearing such as this before?

19         **THE PLAINTIFF:**  No, sir.

20         **THE COURT:**  Okay.  Well, you're proceeding without

21   payment of costs, and that's what we call IFP or in forma

22   pauperis.  You requested to proceed that way, and that request

23   has been granted by the Court.  That makes your case fall

24   under the Prison Litigation Reform Act, and in the first

25   instance, requires the Court to screen your case.  By

1    screening it, the statute is a little broad.  What we're

2    supposed to do here this morning is to determine whether or

3    not your case, your claim, is one which any relief can be

4    granted and whether or not your claim has at least an arguable

5    basis in fact and an arguable basis in law; two different

6    things.  So you can have facts that are absolutely correct,

7    but they may not meet the legal standards of 42 USC

8    Section 1983.  On the other hand, you might not have enough

9    facts, but you might have sufficient law, you might be able to

10   meet the standard of that section.  Okay?

11                  **THE PLAINTIFF:**  Okay.

12                  **THE COURT:**  So we want to find out if you have enough

13   facts and enough law to allow your case to proceed to the next

14   level.  That's the purpose of our hearing today.

15                  Now, in order to screen your case, I consider first

16   of all what you said in your complaint.  But sometimes, as you

17   can imagine, the complaints are not absolutely clear, so what

18   I like to do is to bring the plaintiff, such as yourself, into

19   open court and give you the opportunity to tell me in your own

20   words what your lawsuit is about, why you sued each defendant,

21   what each defendant has to do with your lawsuit, what your

22   damages are, and things such as that.  I take into

23   consideration what you say along with what you put in your

24   complaint, and then I come up with a conclusion as to whether

25   you have stated an arguable basis in fact and an arguable

basis in law such that your case is allowed to proceed to the

next step.  Are you with me?

**THE PLAINTIFF:**  Yes, sir.

**THE COURT:**  Okay.  And we're also going to talk about

some procedural aspects of your case that you may or may not

be aware of.  And since I'm required to consider what you have

to say as a supplement to your complaint but not an actual

amendment to your complaint, then everything you tell me

should be under oath.  So at this time I'm going to ask you to

stand, raise your right hand, and take the oath from the

courtroom deputy.

**(Oath administered.)**

**THE COURT:**  Okay.  Thank you.  You can have a seat.

Mr. Francois, the first thing we need to talk about

is you have an option to choose whether you want the

magistrate judge to hear your case or whether you want the

district judge to hear your case.  Insofar as you are

concerned, there's very little difference between which judge

hears your case.  The rules of evidence are going to be

applied the same regardless of who the judge is.  The Rules of

Civil Procedure, rules of court, they're identical regardless

of who the judge is.  Your right to appeal is the same

regardless of who the judge is.  Pretty much everything is the

same right down the line, with the one possible exception

being the magistrate judge can usually get to your case a

1    little quicker than the district judge.  Okay?

2              **THE PLAINTIFF:**  Yes, sir.

3              **THE COURT:**  I'm the magistrate judge assigned to your

4    case, and Judge McNeel is the district judge assigned to both

5    of your cases.  Now, I can assure you it makes no difference

6    to Judge McNeel and it makes no difference to me which judge

7    you pick.  You're not going to anger either one of us.  It's

8    not going to adversely affect the outcome of your case.  We

9    both have plenty of cases and plenty of work to do.  So do you

10   have an idea of who you want to hear your case?  Do you want

11   to stick with the district judge, or do you want to consent to

12   the magistrate judge?

13             **THE PLAINTIFF:**  I'll stay here.

14             **THE COURT:**  You want to consent to the magistrate

15   judge?

16             **THE PLAINTIFF:**  Yes, sir.

17             **THE COURT:**  All right.  And that's your right, that's

18   your option under the law.  Since we're in court and we're

19   dealing with lawyers and a lawsuit, everything has to be in

20   writing.  So we have a form for that, and we're going to

21   present you with a form, a consent form, in both cases.  You

22   want to consent in both cases?

23             **THE PLAINTIFF:**  Yes, sir.

24             **THE COURT:**  Okay.  And we're going to give you that

25   form and I want you to look over that form and make sure you

1    understand it and review it, but it simply means that you want

2    to have your case -- you're consenting to having your cases

3    tried by a magistrate judge rather than a district judge; and

4    by consenting to the magistrate judge, you're not giving up

5    any rights.  Okay?

6          **THE PLAINTIFF:**  Yes, sir.

7          **THE COURT:**  So she's going to bring you the consent

8    forms.

9          And, Counsel, I failed to get you to identify

10   yourself for the record at the beginning of the hearing.  Why

11   don't you identify yourself for the record and the respective

12   defendants that you represent in both causes that we're

13   proceeding on today.

14         **MS. RICHARDSON:**  Yes, sir.  Good morning.  My name is

15   Anna Richardson, and I represent Jackson County, Mississippi,

16   and Sergeant James McCoy in Cause Number 2457, and I also

17   represent Wendy Nevels in Cause Number 2463.

18         **THE COURT:**  Great.  And do the defendants consent to

19   the magistrate judge?

20         **MS. RICHARDSON:**  Yes, sir.

21         **THE COURT:**  Okay.

22         All right.  Now, Mr. Francois, I've looked over your

23   complaint, both of your complaints, actually, but I'm hoping

24   you can save me a little bit of time by telling me in your own

25   words what your lawsuits are about this morning.  I'm going to

1    ask you some questions so that I can find that out.  And I

2    want to know, when I ask you these questions, keep in mind,

3    how you feel your constitutional rights have been violated.

4    I'm not going to ask you and you don't need to tell me what

5    specific constitutional rights, but generally how you feel

6    your rights are violated, what each defendant has to do with

7    it, what your injuries are, and what your claims are.  Okay?

8    I want to make certain that before I leave here and before you

9    leave here this morning that I have a very good understanding

10   of all of your claims, why you're suing each defendant, who

11   the witnesses are, what your injuries are.  Are you with me?

12          **THE PLAINTIFF:**  Yes, sir.

13          **THE COURT:**  Okay.  I'm going to ask you questions,

14   and then when I get through asking questions, it may be that

15   the attorney for the defendants, the people that you've sued,

16   she may have some questions, so I want you to extend to her

17   the same courtesies and cooperations that you're going to

18   extend to me.  Okay?

19          **THE PLAINTIFF:**  Yes, sir.

20          **THE COURT:**  We're going to start off with some easy

21   questions.

22          State your name.

23          **THE PLAINTIFF:**  My name is Josemany Francois.

24          **THE COURT:**  How old are you?

25          **THE PLAINTIFF:**  I'm 22.

1            **THE COURT:**  And where are you currently housed?

2            **THE PLAINTIFF:**  I'm housed at Jackson County ADC.

3            **THE COURT:**  Okay.  How long have you been housed at

4      the Jackson County Adult Detention Center?

5            **THE PLAINTIFF:**  I've been housed since

6      January 17, 2024.

7            **THE COURT:**  All right.  So a little over a year,

8      then?

9            **THE PLAINTIFF:**  Yes, sir.

10            **THE COURT:**  All right.  And have you gone to trial

11      yet?

12            **THE PLAINTIFF:**  No, sir.

13            **THE COURT:**  Okay.  Do you have a scheduled trial date

14      yet?

15            **THE PLAINTIFF:**  I think it's April 14th.

16            **THE COURT:**  Of this year?

17            **THE PLAINTIFF:**  Yes, sir.

18            **THE COURT:**  So in two months, basically --

19            **THE PLAINTIFF:**  Yes, sir.

20            **THE COURT:**  -- you're set to go to trial?

21            **THE PLAINTIFF:**  Yes, sir.

22            **THE COURT:**  All right.  Now, a little bit of a

23      housekeeping matter here.  Okay?  You've got two lawsuits.

24      You've got one, Number 57 I'll call it, where you sued Jackson

25      County and McCoy.  I think Deputy McCoy, I suppose, or Officer

1    McCoy, Sergeant.  And then you have the other lawsuit, 63,

2    where you sued, I think, Officer or Deputy Nevels.  Do you

3    understand that?

4         **THE PLAINTIFF:**  Yes, sir.

5         **THE COURT:**  And as I appreciate it, and you listen to

6    me carefully, both lawsuits relate to what you call moldy

7    conditions at the jail; is that right?

8         **THE PLAINTIFF:**  Yes, sir.

9         **THE COURT:**  All right.  And so -- but you filed a

10   subsequent lawsuit against Nevels?

11        **THE PLAINTIFF:**  Yes, sir.

12        **THE COURT:**  All right.  You know, generally, under

13   the rules of court, you bring one lawsuit and you sue

14   everybody that relates to those core facts in one lawsuit

15   rather than filing two separate lawsuits.

16        **THE PLAINTIFF:**  Yes, sir.

17        **THE COURT:**  Are you with me?

18        **THE PLAINTIFF:**  Yes, sir.

19        **THE COURT:**  So would you entertain the idea of

20   bringing Nevels into the first lawsuit so that you've got all

21   the defendants in the first lawsuit --

22        **THE PLAINTIFF:**  Yes, sir.

23        **THE COURT:**  -- and then we can dismiss the second

24   lawsuit?

25        **THE PLAINTIFF:**  Yes, sir, I'm okay with that.

1          **THE COURT:**  Okay.  What we're going to do is we're

2     going to prepare an order here this morning dismissing your

3     second lawsuit.  And now that you're asking to basically amend

4     the first lawsuit and bring Nevels into the first lawsuit,

5     unless counsel opposite has some objection, we're going to

6     grant your ore tenus, your oral motion, to amend your first

7     lawsuit to bring Nevels in as a defendant.  Okay?

8          **THE PLAINTIFF:**  Yes, sir.

9          **THE COURT:**  And so just so we're clear, now you're

10    only going to have one lawsuit; but in that one lawsuit,

11    Number 57, you sued Jackson County, you sued McCoy, and now

12    you sue Nevels.  Do you understand?

13         **THE PLAINTIFF:**  Yes, sir.

14         **THE COURT:**  You're okay with this?

15         **THE PLAINTIFF:**  Yes, sir.

16         **THE COURT:**  Okay.  I'm glad we can get that out of

17    the way and it's nice and neat and tidy.

18          So as I appreciate your lawsuit, your lawsuit more or

19    less relates to conditions of confinement.

20         **THE PLAINTIFF:**  Yes, sir.

21         **THE COURT:**  Do you understand a little bit about what

22    that means?

23         **THE PLAINTIFF:**  Very little.

24         **THE COURT:**  Okay.  Well, as I appreciate it, what

25    you're complaining about is that you're saying there's mold or

1     mildew throughout the jail.

2              **THE PLAINTIFF:**  Yes, sir.

3              **THE COURT:**  In the shower and in your living quarters

4     and whatnot.

5              **THE PLAINTIFF:**  Yes, sir.

6              **THE COURT:**  And apparently that's caused you some

7     problems.

8              **THE PLAINTIFF:**  Yes, sir.

9              **THE COURT:**  Is that -- is that a fair statement?

10              **THE PLAINTIFF:**  Yes, sir.

11              **THE COURT:**  Is there anything else about your lawsuit

12     that doesn't fit under that general umbrella?

13              **THE PLAINTIFF:**  Not -- not really, sir.

14              **THE COURT:**  Okay.  All right.  So let's talk about,

15     then -- and that's what I would call conditions of

16     confinement, because it's the condition of the jail in which

17     you're confined.  Are you with me?

18              **THE PLAINTIFF:**  Yes, sir.

19              **THE COURT:**  All right.  So tell me about these

20     conditions that have led you to file this lawsuit.  What's

21     going on?

22              **THE PLAINTIFF:**  I -- when I first got to the jail, I

23     ended up getting into an altercation.  And instead of putting

24     me back in the same zone with the dude I got into the

25     altercation with, they -- they classified me to a segregation

1    zone, and they -- that cell that they classified me to was

2    412, A412, and it was moldy everywhere, where you lay your

3    rack, on the table, on the seats, the shower, the toilet area,

4    everywhere was moldy.  And that's the reason why I brought up

5    the lawsuit against Ms. Nevels is because from what I'm

6    informed, is that she is the one who classifies you, like

7    brings you -- wherever you move to the jail, she's the one who

8    classifies you, and that's why I brought the lawsuit up

9    against her.

10          And then Mr. McCoy, the reason why I brought the

11   lawsuit up against him is because he was the sergeant on, and

12   I asked could they move me from that cell, and they refused to

13   do so.

14          **THE COURT:**  All right.  Are you still in that cell,

15   A412?

16          **THE PLAINTIFF:**  No, sir.

17          **THE COURT:**  So I want to make sure I'm clear.  When

18   you first got in the jail, after the altercation, they put you

19   in A412, right?

20          **THE PLAINTIFF:**  After I left the hole, yes, sir.

21          **THE COURT:**  All right.  How long -- well, do you

22   recall about when you were placed in Cell A412?

23          **THE PLAINTIFF:**  I don't remember the day.

24          **THE COURT:**  Well, are we still in the month of

25   January, or are we later on in the year?

1          THE PLAINTIFF:  I got out of the hole like -- like

2     ten days after the altercation, so probably in the end of

3     January, beginning of February.

4          THE COURT:  Okay.  I'm not asking for a specific

5     date, so --

6          THE PLAINTIFF:  Yes, sir.

7          THE COURT:  -- don't worry about it.

8          And how long were you in Cell A412?

9          THE PLAINTIFF:  I was -- I was in A412 for, I think,

10     a day, and I -- there was -- there was an officer on who was

11     nice enough to move me to the cell next door, which still had

12     mold in it, which was A411, and the only way I was able to get

13     out that zone was to basically cause a scene and get myself

14     sent to isolation.

15          THE COURT:  You flooded the cell, I think is what you

16     said?

17          THE PLAINTIFF:  Yes, sir.

18          THE COURT:  All right.  So you were in Cell A412 for

19     about a day or so?

20          THE PLAINTIFF:  Yes, sir.

21          THE COURT:  And how long were you in A411?

22          THE PLAINTIFF:  I think I ended up going to the

23     isolation that day that I was in -- that they moved me to that

24     cell.

25          THE COURT:  So a day or less?

1          **THE PLAINTIFF:**  Yes, sir.

2          **THE COURT:**  All right.  So those were the two cells

3     that had mold in them?

4          **THE PLAINTIFF:**  Yes, sir.

5          **THE COURT:**  Okay.  And what cell are you in now?

6          **THE PLAINTIFF:**  I am -- I'm in A425 -- 26.

7          **THE COURT:**  Okay.  And once they moved you from A411,

8     I'm assuming -- you correct me if I'm wrong -- you never were

9     moved back to A412; is that right?

10          **THE PLAINTIFF:**  No, sir.  They -- they ended up --

11     after the person I got into the altercation with, he left the

12     jail, they moved me back to the zone, which was B20 at the

13     time.  And they moved B20, because we had a bunch of inmates

14     in that particular pod, to the A Zone, A4, which used to be

15     the segregation zone.  And when they moved us there, the cell

16     was clean, but you could still see that it had -- that it had,

17     like, mold there from stains and stuff.

18          **THE COURT:**  So were you ever put back in A412?

19          **THE PLAINTIFF:**  No, sir.

20          **THE COURT:**  All right.  Were you ever put back in

21     A411?

22          **THE PLAINTIFF:**  No, sir.

23          **THE COURT:**  All right.  But even though you were in

24     the A Zone later on and not in those particular cells, you

25     could see where they had cleaned the cells but there were

1    stains?

2             **THE PLAINTIFF:**  Yes, sir, from mold.

3             **THE COURT:**  Okay.  So then am I correct in assuming,

4    based upon what you're telling me, that your condition of

5    confinement claim relating to a moldy or mildewy cell relates

6    to basically two days, one day in A412 and one day in A411?

7             **THE PLAINTIFF:**  Yes, sir.  And not only that, but the

8    cell -- there's -- there's a cell still in our zone that just

9    is, like, very, very moldy, and they won't -- they won't come

10   in and spray it.  They won't, like, with any mold treatment or

11   let us at least try to clean it or anything like that.  They

12   just let the mold build up.  And I don't know if I can, like,

13   ask the Court this, but if somebody was to come and see and

14   take pictures, there's so much mold in that cell, and it's in

15   the zone that we're in.

16            **THE COURT:**  All right.  But, now -- I want to make

17   sure I understand.  But you're not in this -- in the cell that

18   you're talking about right now, correct?

19            **THE PLAINTIFF:**  No, sir.  No, sir.

20            **THE COURT:**  Okay.  That's somebody else's cell?

21            **THE PLAINTIFF:**  Yes, sir.

22            **THE COURT:**  Okay.

23            **THE PLAINTIFF:**  It's an unoccupied cell right now.

24            **THE COURT:**  Unoccupied.  Nobody's in there.

25            **THE PLAINTIFF:**  Yes, sir.

1      **THE COURT:**  Okay.  All right.  And the reason, from

2  what I'm hearing you -- and you listen to me carefully and add

3  anything you think you need to.  The reason you're suing --

4  I'll call her Officer Nevels.  I think it's a lady, right?

5      **THE PLAINTIFF:**  Yes, sir.

6      **THE COURT:**  Is because she classified you?

7      **THE PLAINTIFF:**  To that cell, yes, sir.

8      **THE COURT:**  Well, did she classify you to that cell,

9  or did she classify you such that you were to be placed in

10  segregation?  Do you know?

11      **THE PLAINTIFF:**  Like -- like I said before, I don't

12  know how the jail works, but I've put in request after

13  request, and they did inform me that Ms. Nevels'

14  classification, which is Ms. Nevels, that she is the one who

15  classifies you to where you go.  And whenever they moved me to

16  that pod, the officer who moved me, who -- he no longer works

17  there, he said that classification put you in this cell.

18  So --

19      **THE COURT:**  In the cell or in the pod?

20      **THE PLAINTIFF:**  In the cell.

21      **THE COURT:**  Okay.  Let me ask you something:  What

22  are you charged with, Mr. Francois?

23      **THE PLAINTIFF:**  I am charged with sexual battery and

24  lustful touching.

25      **THE COURT:**  Of a minor?

1      **THE PLAINTIFF:**  Yes, sir.

2      **THE COURT:**  Okay.  And do you know if that

3  necessitates that you be segregated or classified in a certain

4  way because of those charges?

5      **THE PLAINTIFF:**  Yes, sir.  They -- the -- we -- at

6  the time, we only had one pod for people with those particular

7  type of charges, and that's why if -- since I got into the

8  altercation, that only one person could go back to that pod,

9  and one person goes to the segregation zone.

10     **THE COURT:**  Right.  Is it your understanding -- and

11  if you don't know, tell me -- is it your understanding that in

12  light of those charges that you have against you, that they

13  classify you a certain way to -- maybe to protect you from

14  other inmates?  Is that your understanding?

15     **THE PLAINTIFF:**  Yes, sir.  That -- that's the purpose

16  of it.

17     **THE COURT:**  All right.  So are you saying that

18  Officer Nevels should not have classified you such that you

19  were to be put in segregation for your own protection?  You're

20  not -- are you saying that?

21     **THE PLAINTIFF:**  No.  No.  I understand why she did

22  what she did --

23     **THE COURT:**  You're just taking issue with the fact

24  that as a result of your classification, you got put in cell

25  A412 or A411.

1      **THE PLAINTIFF:**  Yes, sir.

2      **THE COURT:**  Okay.  Okay.  And she's the

3  classification officer; is that right?

4      **THE PLAINTIFF:**  Yes, sir.

5      **THE COURT:**  And so do you have any reason to believe

6  that she was doing something other than what she's required to

7  do as part of her job duties and responsibilities?

8      **THE PLAINTIFF:**  Possibly, yes, sir.

9      **THE COURT:**  You do?

10      **THE PLAINTIFF:**  Yes, sir.

11      **THE COURT:**  Okay.  Why do you think that she's doing

12  something other than what her job requires her to do as far as

13  making sure you're in segregation?

14      **THE PLAINTIFF:**  I don't think that she's doing

15  something that -- I mean, I think that she's doing her job,

16  but I do think there's a possibility that she did not know

17  that it was a moldy cell.

18      **THE COURT:**  Gotcha.

19      **THE PLAINTIFF:**  That, I am willing to tell the Court.

20  I think that there's a possibility that Ms. Nevels never knew

21  that the cell was moldy, but I would like to find that out,

22  you know; and if so, if she knew that it was, why was I put in

23  there.

24      **THE COURT:**  Let me ask you this:  Have you ever seen

25  Officer Nevels in the A Zone when you were in A412 or A411?

1          **THE PLAINTIFF:**  No, sir.

2          **THE COURT:**  Have you ever seen her in the A Zone?

3          **THE PLAINTIFF:**  No, sir.

4          **THE COURT:**  Did you know Officer Nevels prior to

5    coming to the jail?

6          **THE PLAINTIFF:**  No, sir.

7          **THE COURT:**  As we sit here today, have you ever had

8    any conversations with Officer Nevels directly?

9          **THE PLAINTIFF:**  I passed -- I had one conversation

10   with her since I've been incarcerated and she was just passing

11   by as I was in the holding tank to go to court.

12         **THE COURT:**  Okay.  Do you have any reason to believe

13   as we sit here today that Officer Nevels is out to get you or

14   has some beef or some issue with you?

15         **THE PLAINTIFF:**  Not -- not Officer Nevels.  I mean

16   not -- not Ms. Nevels.

17         **THE COURT:**  Okay.  All right.  Have you told me all

18   of the reasons why you sued Officer Nevels?

19         **THE PLAINTIFF:**  That is just the main reason why.

20   And I --

21         **THE COURT:**  Well, if there's any other reasons why

22   you sued Officer Nevels -- and we're going to get to McCoy in

23   a minute and Jackson County -- I need to know about them.  So

24   have you told me all of the reasons why you sued Officer

25   Nevels?

1      **THE PLAINTIFF:** When I -- they -- no, not -- not

2   really, sir. If I can -- if I can remember correctly, and

3   I'll try to get that evidence, if I can, whenever I asked to

4   move zones or move cells, they told me -- the officer tells

5   you put it in on the kiosk. And I did, I put it into

6   classification, and I think they ended up writing me back and

7   telling me no. And I told them why, and whenever I asked the

8   sergeant, like, for a cleanup or anything like that, he told

9   me I'm going to have to wait until cleanup day, which is three

10  days away.

11     **THE COURT:** Well, do you know if -- let me ask it

12  this way: Were you asking to be reclassified, or were you

13  asking to be moved to a different cell?

14     **THE PLAINTIFF:** Moved to a different cell.

15     **THE COURT:** All right. And do you know -- do you

16  know if Officer Nevels is in charge of moving individuals from

17  one cell to another, or does she only handle classification?

18     **THE PLAINTIFF:** I -- from what every officer says at

19  the jail, yes, she moves you from cell to the zone. If I ask

20  an officer right now can they move me next door to the cell

21  right next to me, they say I have to put it in to

22  classification.

23     **THE COURT:** All right. So now have you told me all

24  the reasons why you sued Officer Nevels?

25     **THE PLAINTIFF:** Yes, sir.

1          **THE COURT:**  Okay.  Now let's talk about McCoy.  All

2     right?  Sergeant McCoy.  I think you told me that you asked to

3     be moved from A412, you asked Sergeant McCoy, and he refused.

4          **THE PLAINTIFF:**  Yes, sir.

5          **THE COURT:**  Do you recall -- well, that would have

6     been in the latter part of January, early February of '24?

7          **THE PLAINTIFF:**  Yes, sir.

8          **THE COURT:**  Okay.  And was Officer McCoy around your

9     cell or at your cell during this conversation?

10          **THE PLAINTIFF:**  No, sir.  He ended up coming to the

11     cell after I flooded the cell and caused the scene.

12          **THE COURT:**  After you flooded A411?

13          **THE PLAINTIFF:**  Yes, sir.

14          **THE COURT:**  Okay.  And tell me about the conversation

15     you had or anything you can remember about the conversation

16     you had with Officer McCoy while you were in A411 cell.

17          **THE PLAINTIFF:**  He -- the conversation that we had at

18     the time did not have anything to do with the cell or the mold

19     that was in the cell.

20          **THE COURT:**  I suspect it had to do with you flooding

21     the cell.

22          **THE PLAINTIFF:**  It had to do with flooding the cell

23     and being disobedient towards an officer, being disobedient.

24     Yes, sir.

25          **THE COURT:**  So did you ever ask Officer McCoy to --

1    "I need to get out of A411.  There's mold in there"?

2         **THE PLAINTIFF:**  Yes, sir, I did, and he -- I don't

3    remember what he said, but he didn't tell me I could.  And

4    that's the reason why I ended up flooding the cell again, and

5    then they finally moved me into isolation.

6         **THE COURT:**  Okay.

7         **THE PLAINTIFF:**  Because I asked to be moved, and he

8    said no.  And I said, "Well, can you at least put me back in

9    the hole?"  I was willing to go back to the hole, and he

10    refused to let me do that.  So I thought the only way to go to

11    the hole is by making -- doing some type of action to deserve

12    to be in the hole.

13         **THE COURT:**  Okay.  But these events that you're

14    talking about, they all occurred on the same day, and that was

15    the only day that you were in A411; is that right?

16         **THE PLAINTIFF:**  Yes, sir.

17         **THE COURT:**  Okay.  And so you asked him to get you

18    out of A411, and he told you no, and you flooded the cell.

19         **THE PLAINTIFF:**  Yes, sir.

20         **THE COURT:**  And eventually you got out that day.

21         **THE PLAINTIFF:**  Yes, sir.

22         **THE COURT:**  Okay.  Do you know if Officer McCoy had

23    the authority or ability to move from you one cell to another?

24         **THE PLAINTIFF:**  I -- I do know that.  They -- like I

25    said before, they -- the officers say they go straight to

1    Ms. Nevels and they say -- they ask her if we can get moved.

2    But I've seen -- not saying anything about favoritism, but

3    I've seen some sergeants or lieutenants move people by their

4    own choice and not ask Ms. Nevels, and he -- he didn't do

5    that.  He -- I mean, I had a valid reason to be moved, not

6    because I wanted to or because I needed to, and he didn't do

7    that.

8          THE COURT:  Do you know if these other individuals

9    that you've seen being moved had the same classification as

10   you?

11         THE PLAINTIFF:  Yes, sir.  The only -- only people

12   I'm in the pod with is people with the same classification as

13   me.

14         THE COURT:  Okay.  But they were still moved -- they

15   may have been moved to a different cell, but it was still in

16   the A Zone; is that right?

17         THE PLAINTIFF:  Yes, sir.  He got -- still in the

18   same pod as me.  He just got moved to a different cell because

19   he just wanted to move.

20         THE COURT:  All right.  Did you know Officer McCoy

21   prior to these events?

22         THE PLAINTIFF:  No, sir.

23         THE COURT:  All right.  Other than this one

24   conversation you were telling me about with Officer McCoy,

25   have you had any other conversations with Officer McCoy?

1      **THE PLAINTIFF:**  I don't -- nothing but over kiosk.

2      **THE COURT:**  Okay.  Do you have any reason to believe

3    that Officer McCoy is out to get you or is intending to harm

4    you or abuse you in any way?

5      **THE PLAINTIFF:**  I don't think that he's out to harm

6    me or abuse me, but I do feel like Mr. McCoy is out to get not

7    only me, but just people with my charges.

8      **THE COURT:**  Okay.  And that's because he didn't move

9    you from the cell when you wanted to be moved?

10      **THE PLAINTIFF:**  Not only that.  People just -- I'm

11    not just saying that because of that one incident, but people,

12    you know, have asked, like, for certain things, you know, from

13    Mr. McCoy and -- that other officers probably would do, and,

14    he just -- you know, he just doesn't do it.

15      **THE COURT:**  Okay.

16      **THE PLAINTIFF:**  Like if -- like things out of need,

17    you know, and like hygiene or something, or trying to talk to

18    him about how one of his officers are treating us and trying

19    to address that issue, he doesn't take those matters seriously

20    when we address them to him.

21      **THE COURT:**  Okay.  Have you discussed with me all the

22    reasons you've sued Officer McCoy?

23      **THE PLAINTIFF:**  Yes, sir.

24      **THE COURT:**  Okay.  Now, you've also sued Jackson

25    County, Mississippi; is that right?

1          **THE PLAINTIFF:**  Yes, sir.

2          **THE COURT:**  Tell me why you've sued Jackson County,

3     Mississippi.

4          **THE PLAINTIFF:**  I ended up suing the -- trying to sue

5     Jackson County ADC, but they told me I could not do that, I

6     can only sue the County.

7          **THE COURT:**  All right.

8          **THE PLAINTIFF:**  So for -- they're the one that, I

9     think, owns the jail and, you know, has its inmates.  The

10    reason why I'm suing Jackson County is because -- and still to

11    this day -- as I was on -- I know this is kind of off topic,

12    but as I was being transported to the holding cell, two, three

13    officers told me that they're actually kind of glad that I'm

14    trying to do something, you know, because the -- they don't do

15    what they need for the inmates, like, when it comes to

16    hygiene, when it comes to the mold, and there's mold all over

17    that jail right now, and, like, the maintenance right now.

18    Like, it's just horrible.  Toilets don't work for certain

19    people, showers don't work for certain people.  It's just --

20    it's bad.

21         **THE COURT:**  Okay.

22         **THE PLAINTIFF:**  And I feel like Jackson County could

23    do more for their inmates.

24         **THE COURT:**  So from what I'm hearing you say, you're

25    suing Jackson County because Jackson County has not corrected

1     the mold issue, as you call it.

2              **THE PLAINTIFF:**  Yes, sir.

3              **THE COURT:**  All right.

4              **THE PLAINTIFF:**  And they say that they come in and

5     spray, like they have some guy or something like that come in

6     and spray the cells for mold and everything, but I haven't

7     seen any, like, person who, you know, comes in and sprays a

8     cell, and I've been there for over a year now.

9              **THE COURT:**  Do they give you cleaning products?

10             **THE PLAINTIFF:**  Yes, sir.

11             **THE COURT:**  Like once a week or something?

12             **THE PLAINTIFF:**  Twice a week, sir.

13             **THE COURT:**  Do they give you some rags with the

14    cleaning products?

15             **THE PLAINTIFF:**  Just a toilet scrub brush.

16             **THE COURT:**  Do they give you -- is it like a solution

17    in a squirt bottle or what?

18             **THE PLAINTIFF:**  No, sir.  We're not allowed to have

19    those.

20             **THE COURT:**  All right.  What cleaning products do

21    they give you?  Describe them for me.

22             **THE PLAINTIFF:**  Mop, mop water.

23             **THE COURT:**  Mop and water?

24             **THE PLAINTIFF:**  Yeah, mop water, like, with cleaning

25    supplies in the mop bucket.  That's it.

1          **THE COURT:**  When you say cleaning supplies, tell me

2     what you mean.

3          **THE PLAINTIFF:**  Like we -- on Mondays and Thursdays

4     for A-Pod that I know of, we get a mop bucket -- I don't know

5     what's in the mop bucket.

6          **THE COURT:**  They provide some liquid in the mop

7     bucket?

8          **THE PLAINTIFF:**  Yes, sir.  Yes, sir.

9          **THE COURT:**  It's not just water, I take it?

10         **THE PLAINTIFF:**  No, sir.

11         **THE COURT:**  Okay.

12         **THE PLAINTIFF:**  And they give us a broom and -- a big

13    broom or a wide broom to --

14         **THE COURT:**  Push broom?

15         **THE PLAINTIFF:**  -- yeah, push broom to clean the

16    zone, and a little scrub brush and a toilet brush.

17         **THE COURT:**  Okay.  And that's twice a week?

18         **THE PLAINTIFF:**  Twice a week, yes, sir.

19         **THE COURT:**  All right.  Have you told me all the

20    reasons you're suing Jackson County in your lawsuit?

21         **THE PLAINTIFF:**  Yes, sir.  It's just -- like I said,

22    with the maintenance issue as well, it's -- it's such a big

23    issue.  And a lot of the officers themselves has put in

24    complaints about, you know, what they -- that maintenance

25    ain't been doing anything.  Like -- like we -- our roof is

1   leaking.  Like, it's just -- it -- we have water falling down

2   everywhere.  And there was -- I know this is kind of off

3   topic, but there was, like, a dude that fell and ended up

4   going to the hospital the other day because of the water that

5   drips from the ceiling.

6          And there's this thing on the ceiling, it's -- I

7   don't know what it's called.  I think it's a blower or

8   something like that whenever smoke gets in the facility -- but

9   that thing's supposed to be closed, like it is every other

10  zone, and they leave ours wide open and we freeze in there,

11  like, every day.  Like this morning, it's extremely cold.  And

12  that's another reason why.

13          **THE COURT:**  Well, has your cell been leaking from the

14  roof?

15          **THE PLAINTIFF:**  No, sir, not the -- not the cell, but

16  the dayroom that we -- that we stay in all day is leaking.

17          **THE COURT:**  Do your toilets work in your cell?

18          **THE PLAINTIFF:**  No, sir.

19          **THE COURT:**  All right.  Your -- what else did you

20  say?  Your toilet --

21          **THE PLAINTIFF:**  My toilet and shower doesn't

22  currently work, and I'm trying to get moved to the cell next

23  to me.

24          **THE COURT:**  Okay.  How long has your toilet not been

25  working?

1          **THE PLAINTIFF:**  As long as I can remember.  The cell

2    that I'm in right now, 426, it doesn't -- nothing works in

3    there.

4          **THE COURT:**  How long have you been in that cell?

5          **THE PLAINTIFF:**  I've been in this cell for -- for

6    like three or four days.

7          **THE COURT:**  Okay.  What's wrong with the toilet?

8          **THE PLAINTIFF:**  It doesn't flush.  Like, it -- it has

9    water.  Like, if you press the button, water will come in the

10   toilet, but it won't flush.

11         **THE COURT:**  Okay.  Is it clogged?

12         **THE PLAINTIFF:**  It -- it isn't clogged.  It just --

13   it just won't flush for some reason.  I don't know why.

14         **THE COURT:**  Have you informed somebody of that?

15         **THE PLAINTIFF:**  I did.

16         **THE COURT:**  They haven't come to repair it yet?

17         **THE PLAINTIFF:**  No, sir.  And also I informed them of

18   a requested action I made a couple days ago for them to turn

19   on my shower.  And -- and this actually happens more than

20   once:  The people will tell me they turned my shower on, and

21   it ain't turned on.

22         **THE COURT:**  Have you been able to take a shower

23   elsewhere?

24         **THE PLAINTIFF:**  Yes, sir, if somebody else lets me go

25   in their cell and take a shower.

1          **THE COURT:**  So you're able to take a shower every day

2     or however often you get to take a shower?

3          **THE PLAINTIFF:**  Yes, sir.

4          **THE COURT:**  But your shower in your cell doesn't

5     work?

6          **THE PLAINTIFF:**  No, sir.

7          **THE COURT:**  And you have the ability to use the

8     toilets somewhere else, obviously?

9          **THE PLAINTIFF:**  Yes, sir.

10         **THE COURT:**  But your toilet in your cell doesn't

11    work; is that correct?

12         **THE PLAINTIFF:**  Yes, sir.

13         **THE COURT:**  All right.  Let's talk -- have we

14    completely discussed why you sued Jackson County now?

15         **THE PLAINTIFF:**  Yes, sir.

16         **THE COURT:**  All right.  You mentioned that I think

17    you had some issues that you're thinking is related to the

18    mold; is that right?

19         **THE PLAINTIFF:**  I don't know for a fact because I'm

20    not no doctor, but I would like to get checked, if that's

21    okay.

22         **THE COURT:**  Well, have you filed a sick request or a

23    request to see the nurse?

24         **THE PLAINTIFF:**  I -- I have filed a request to see

25    the nurse, but I -- I haven't got seen yet.  So I'm going --

1          **THE COURT:**  When did you file the request?

2          **THE PLAINTIFF:**  I think I filed one in the beginning

3     of, like, March or February.

4          **THE COURT:**  Of last year?

5          **THE PLAINTIFF:**  Of last year.

6          **THE COURT:**  And you don't -- you didn't see the

7     nurse?  They didn't respond to your sick call or what have

8     you?

9          **THE PLAINTIFF:**  No, sir.

10         **THE COURT:**  What did you tell them was going on in

11    the sick call that you filed in February or March of last

12    year?

13         **THE PLAINTIFF:**  That, you know, I just -- like, my --

14    my chest and my back hurt.  I know my back's been hurting

15    because of the racks and everything, but --

16         **THE COURT:**  Well, that has nothing to do with the

17    mold, though, right?

18         **THE PLAINTIFF:**  No, sir.

19         **THE COURT:**  I'm asking are you having any problems as

20    a result of the mold you've been discussing.

21         **THE PLAINTIFF:**  Yeah, that's what I don't know.

22    That's why I wanted to get checked with the nurse.

23         **THE COURT:**  Okay.  But you've only filed one sick

24    request, and that was in February or March of last year?

25         **THE PLAINTIFF:**  Yes.

1          **THE COURT:**  And they didn't see you?

2          **THE PLAINTIFF:**  No, sir.

3          **THE COURT:**  Have you filed any additional sick

4     requests?

5          **THE PLAINTIFF:**  No, sir.  I've been -- I'm still

6     waiting.

7          **THE COURT:**  From February and March of last year?  A

8     whole year?

9          **THE PLAINTIFF:**  I'm -- yes, sir.

10          **THE COURT:**  Well, you might want to file another

11     request because it seems like something -- it got lost or

12     something from February of last year, Mr. Francois.

13          **THE PLAINTIFF:**  Yes, sir.

14          **THE COURT:**  Now, are you familiar with the grievance

15     process?  You have to go to the kiosk and file a grievance?

16          **THE PLAINTIFF:**  Yes, sir.

17          **THE COURT:**  Did you file a grievance about these

18     matters that you're complaining about?

19          **THE PLAINTIFF:**  I've filed multiple grievances.

20          **THE COURT:**  All right.  And forgive me, but do you

21     know the process at Jackson County, how this works?  I think

22     you file a complaint on the grievance, and it goes up to

23     somebody and they respond, right?

24          **THE PLAINTIFF:**  Yes, sir.

25          **THE COURT:**  And if they don't respond to your

1    satisfaction, what do you have to do as part of the grievance

2    process after that?

3        **THE PLAINTIFF:**  The grievance process is, I think, as

4    far as I know, like, the top of where you go, if that makes

5    sense.  Like, that's, where -- like, the best you can do.

6        **THE COURT:**  Right.  I think you fill out a grievance,

7    a complaint.

8        **THE PLAINTIFF:**  Yes, sir.

9        **THE COURT:**  And then it goes up to a captain or

10   whoever.

11       **THE PLAINTIFF:**  Yes, sir.

12       **THE COURT:**  And then they respond and say, "Okay.  We

13   can do this to help you," or, "No, we deny your request."

14   Right?

15       **THE PLAINTIFF:**  Yes, sir.

16       **THE COURT:**  And if you're not satisfied with their

17   response that you get from that first complaint, what's your

18   understanding of what you're to do next, if anything?

19       **THE PLAINTIFF:**  File another grievance.

20       **THE COURT:**  Is that what you think?

21       **THE PLAINTIFF:**  Yes, sir.

22       **THE COURT:**  Okay.  Did you do that in this case?

23       **THE PLAINTIFF:**  Yes, sir.  I filed multiple.

24       **THE COURT:**  Okay.  Okay.  All right.  Have you told

25   me everything about your lawsuit that you feel you need to?

1          **THE PLAINTIFF:**  Yes, sir.

2          **THE COURT:**  Okay.  All right.  I'm going to ask

3     counsel for the defendants if she has any questions.  If she

4     does, she's going to ask you some questions.

5          Go ahead, Counsel.

6          **MS. RICHARDSON:**  Good morning, Mr. Francois.

7          **THE PLAINTIFF:**  Good morning.

8          **MS. RICHARDSON:**  Okay.  You started to talk a little

9     bit about your toilet and that kind of thing, but you didn't

10    include any of those things as part of your complaints in

11    either lawsuit, correct?

12         **THE PLAINTIFF:**  No, ma'am.

13         **MS. RICHARDSON:**  Just moldy cell complaint?

14         **THE PLAINTIFF:**  Yes, ma'am.

15         **MS. RICHARDSON:**  Okay.  And I -- I would agree that

16    you are familiar with the grievance process because you

17    filed -- and you will have these documents.  Okay?  You filed

18    39 grievances, and out of those, only one complained about the

19    cell that you were in, and you wanted to be put -- you said

20    you wanted to be put in a different cell because, even one

21    that wasn't being repaired, you would have access to the phone

22    24/7, you didn't care it didn't have a TV or anything.  And

23    that was the only one where you asked about being moved from

24    your cell.  Does that sound --

25         **THE PLAINTIFF:**  I said what, again?

1          **MS. RICHARDSON:**  You said, quote, "Hey, I understand

2     there isn't a zone that isn't being repaired, but there is

3     nothing wrong with Dorm C except a TV, which is fine, and

4     doesn't have speakers, which is fine.  Dorm B doesn't have a

5     TV, which is fine.  I'd rather be there and have the freedom

6     to get to a phone 24/7."

7          **THE PLAINTIFF:**  Oh, that was -- that was -- that

8     doesn't have anything to do with the moldy cell.

9          **MS. RICHARDSON:**  I understand.

10          **THE PLAINTIFF:**  It was -- that was about me trying to

11     move from isolation --

12          **MS. RICHARDSON:**  Okay.

13          **THE PLAINTIFF:**  -- to a regular zone.

14          **MS. RICHARDSON:**  Well, then that -- okay.  Then

15     that's even -- that was the only one where you asked to move

16     to a different cell.  I'll represent to you that in these 39

17     grievances, not one pertains to the circumstances of your

18     moldy cell that you're talking about now.  You talk about how

19     your mother doesn't love you and how much wood can a woodchuck

20     chuck all throughout your grievance stuff, but you didn't

21     address the complaints that you have in these lawsuits through

22     your grievances, did you?

23          **THE PLAINTIFF:**  I guess not to the grievance process,

24     but the general request, which is the same thing.

25          **MS. RICHARDSON:**  No, it's not the same thing.

1    There's a grievance process, and there's a general request.

2    And I can tell that you know the difference based on the

3    documents that you -- the voluminous documents that you've

4    filed while you've been at the ADC.

5            **THE PLAINTIFF:**  But I'm -- I -- I haven't -- when I

6    first got to the jail, I don't know what to do.  Our grievance

7    process is different from the jail that they transferred me

8    from.  And they told -- and if an officer tells me to go to

9    general request, then that's where I go.  I'm only listening

10    to the officer.  I don't know what to do.

11            **MS. RICHARDSON:**  Okay.  So you never sought -- in an

12    entire year, the mold was so bad in the two days that you were

13    in the two different cells that you requested to be seen by a

14    nurse but didn't follow up for over a year; is that correct?

15            **THE PLAINTIFF:**  Yes, ma'am.

16            **MS. RICHARDSON:**  Okay.  And the other, looking

17    through your maintenance requests, the non-grievance requests

18    that you have in here, you -- maintenance attempted to fix

19    everything that you complained about.  Now, whether it was to

20    your satisfaction, that's a different story, but they

21    attempted to fix everything and they told you that, correct?

22            **THE PLAINTIFF:**  Well, what did I request to get

23    fixed, and what did --

24            **MS. RICHARDSON:**  I'm not -- sir, there are over 200

25    documents here that you'll have access to, and -- but I'm

1   representing to you that that's what it is, but you'll be able

2   to confirm it once you get it.

3        **THE PLAINTIFF:**  That's the thing, though.  I haven't

4   seen maintenance -- I'm not saying that they haven't done

5   anything, but I haven't seen maintenance do anything, not to

6   my satisfaction or anything, but I have not seen maintenance

7   do anything.  And there's officers, officers, not just

8   inmates, that will vouch for that.  They don't do anything at

9   the jail.

10        **MS. RICHARDSON:**  Okay.  All right.  I think -- I

11   think that's all I have, Your Honor.

12        **THE COURT:**  All right.  Hold on one minute.

13        All right.  Mr. Francois, you heard the lawyer

14   mention she had some documents.

15        **THE PLAINTIFF:**  Yes, sir.

16        **THE COURT:**  Under the rules of court that I alluded

17   to earlier, she's required to give you some documents, some

18   prediscovery disclosures.  All right?

19        **THE PLAINTIFF:**  Yes, sir.

20        **THE COURT:**  So, Ms. Richardson, why don't you

21   identify those for the record what you're producing.

22        **MS. RICHARDSON:**  Yes, sir.  I'm producing

23   Bates-stamped documents JC Francois 0001 to 0221, and they

24   consist of all of his kiosk requests including grievances,

25   jail incident reports, and booking sheets.

1          **THE COURT:**  Okay.  And she's going to give those to

2     you, and you can take them back with you.  All right?

3          **THE PLAINTIFF:**  Yes, sir.  Thank you.

4          **THE COURT:**  Now, Ms. Richardson, I gather from some

5     of your questions that there may be an issue about exhaustion.

6          **MS. RICHARDSON:**  Yes, sir.

7          **THE COURT:**  Is that a fair statement?

8          **MS. RICHARDSON:**  Yes, sir.

9          **THE COURT:**  Do you intend to file an early

10    dispositive motion on this issue?

11         **MS. RICHARDSON:**  I do.

12         **THE COURT:**  Okay.  Mr. Francois --

13         **THE PLAINTIFF:**  A motion for what, sir?

14         **THE COURT:**  I'm getting ready to tell you.

15         **THE PLAINTIFF:**  Yes, sir.

16         **THE COURT:**  All right.  So the way this works, the

17    rules of court, you have to exhaust your remedies, your

18    grievance process, before you can file your lawsuit.  This

19    Court doesn't have jurisdiction until you go through process

20    and you comply completely with that process.  What they're

21    going to argue, basically from the questions, is that you

22    didn't complete, you didn't exhaust the grievance process.  If

23    that's true, then your lawsuit that you filed, I don't have

24    jurisdiction to hear it.  Okay?  And so she's going to file a

25    motion -- from what I'm gathering, she's going to file a

1  motion to have your lawsuit thrown out of court.  And you're

2  going to get to see the motion.  You're going to get to

3  respond to the motion and say why they're wrong.  And then I'm

4  going to have to read the motion and read your response and

5  decide whether you exhausted your remedies, whether you

6  exhausted the grievance process such that then I can hear your

7  lawsuit.  Are you with me?

8          **THE PLAINTIFF:**  Yes, sir.

9          **THE COURT:**  All right.  That's what she's indicating

10  she's going to do.  So, again, when she files that motion,

11  you're going to get to read it.  You're going to need to

12  respond to it, okay, so that I can review all the paperwork

13  and come up with a decision based upon the law.

14          **THE PLAINTIFF:**  Yes, sir.

15          **THE COURT:**  Now, something that I haven't told you

16  about so far that you need to be very much aware of.

17          **THE PLAINTIFF:**  Yes, sir.

18          **THE COURT:**  You filed a lawsuit, which that's your

19  right to do.  You have to keep the court, the court clerk,

20  abreast of your mailing address at all times.

21          **THE PLAINTIFF:**  Yes, sir.

22          **THE COURT:**  All right?  So if you move or you get

23  transferred or what have you, or released, what have you,

24  you've got to let the court clerk know your mailing address so

25  that when she mails you documents or when the court mails you

1    something that you get it.

2         **THE PLAINTIFF:**  Yes, sir.

3         **THE COURT:**  Because oftentimes there's going to be a

4    deadline when you have to take some action, file a response.

5    Okay?

6         **THE PLAINTIFF:**  Yes, sir.

7         **THE COURT:**  And if you don't file a response within

8    that time frame, then your case could get dismissed.  All

9    right?

10        **THE PLAINTIFF:**  Yes, sir.

11        **THE COURT:**  So that's your responsibility.  Any time

12   you move, you need to let the court clerk know of your new

13   address.

14        **THE PLAINTIFF:**  Yes, sir.

15        **THE COURT:**  Are you with me?

16        **THE PLAINTIFF:**  Yes, sir.

17        **THE COURT:**  All right.  I'm going to give you 60 days

18   to file your motion on the exhaustion issue.

19        So she's going to file her motion within 60 days.

20        **THE PLAINTIFF:**  Yes, sir.

21        **THE COURT:**  And we'll send out a text order or an

22   order setting forth that deadline, Candice will.  And I don't

23   think we need to conduct any discovery at this point -- you've

24   got your prediscovery disclosures -- until I decide this

25   issue.

1            What we're going to do is we're going to take a brief

2    recess because we're going to get an order where you dismissed

3    the Nevels lawsuit, I call it --

4            **THE PLAINTIFF:**  Yes, sir.

5            **THE COURT:**  -- and you brought her over to this

6    lawsuit, so that we're proceeding with one lawsuit.  All

7    right?

8            **THE PLAINTIFF:**  Yes, sir.

9            **THE COURT:**  So we're going to take a five-minute

10   recess to prepare that order.

11       **(Recess taken.)**

12           **THE COURT:**  All right.  Please be seated.

13           So, Mr. Francois, we have a stipulation of voluntary

14   dismissal that the Court has prepared consistent with our

15   discussions and your desire earlier to dismiss Cause Number

16   63.  All right?

17           **THE PLAINTIFF:**  Ms. Nevels.

18           **THE COURT:**  And then we've got another order, I

19   believe, where we've granted you leave to amend the earlier

20   cause of action to add Nevels and to assert those claims and

21   only those claims that you assert in Nevels in Suit Number 63.

22   Okay?

23           **THE PLAINTIFF:**  Yes, sir.

24           **THE COURT:**  All right.  So I'll -- if you're going to

25   amend it, which you've indicated that you are, you need to

1    file your amended complaint putting Nevels in the first

2    lawsuit, those claims that you put in 63, in the first

3    lawsuit, and you need to do that within 30 days --

4            **THE PLAINTIFF:**  Yes, sir.

5            **THE COURT:**  And there's an order entered.  So I think

6    we're going to need to get you and Ms. Richardson to sign the

7    stipulation of dismissal, please.

8            All right.  Now that we've taken care of having the

9    latter action dismissed and we've gotten the motion to amend

10   granted and we've established an early dispositive motion

11   deadline on the exhaustion, Counsel, is there anything else we

12   need to address this morning?

13           **MS. RICHARDSON:**  No.  That takes care of our pending

14   motion to consolidate, then, the procedural stuff.

15           **THE COURT:**  We were just talking about that.  We're

16   going to moot that motion because it's no longer necessary.

17           **MS. RICHARDSON:**  Sure.  Okay.

18           **THE COURT:**  Mr. Francois, before we close, do you

19   have anything you want to add on the record?

20           **THE PLAINTIFF:**  No, sir.  Thank you for having me

21   today.

22           **THE COURT:**  All right.  Glad you could come.

23           That concludes the hearing, and good luck to you,

24   Mr. Francois.  We'll have a ruling out once we get -- once we

25   get the motions and it's fully briefed.  Okay?

1              **THE PLAINTIFF:**  Y'all have a blessed day.

2        **THE COURT:**  Thank you.

3                    (Hearing concluded.)

4                         -  -  -

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## CERTIFICATE OF COURT REPORTER

2

3       I, Kati Vogt, RPR, RMR, RDR, CRR, Official Court Reporter

4   for the United States District Court for the Southern District

5   of Mississippi, appointed pursuant to the provisions of Title

6   28, United States Code, Section 753, do hereby certify that

7   the foregoing is a correct transcript of the proceedings

8   reported by me using the stenotype reporting method in

9   conjunction with computer-aided transcription, and that same

10  is a true and correct transcript to the best of my ability and

11  understanding.

12      I further certify that the transcript fees and format

13  comply with those prescribed by the Court and the Judicial

14  Conference of the United States.

15

16

17      s/Kati Vogt
        _____
        KATI VOGT, RPR, RMR, RDR, CRR
18      OFFICIAL COURT REPORTER

19

20

21

22

23

24

25