IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JOSEMANY JEAN FRANCOIS**                                                      **PLAINTIFF**

**VERSUS**                                      **CIVIL ACTION NO. 1:24-cv-00057-RPM**

**JACKSON COUNTY, MISSISSIPPI, et al.**                          **DEFENDANTS**

### ORDER GRANTING MOTION [37] FOR SUMMARY JUDGMENT FOR PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

On February 27, 2024, *pro se* Plaintiff Josemany Jean Francois filed this lawsuit under 42 U.S.C. § 1983. When he filed his Complaint, Plaintiff was a pretrial detainee being housed at the Jackson County Adult Detention Center ("JCADC") in Pascagoula, Mississippi, [3] at 2-4, but he is now housed in the custody of the Mississippi Department of Corrections at the South Mississippi Correctional Institution in Leakesville, Mississippi, [49] at 1. Plaintiff names Jackson County, Mississippi; Sergeant Unknown McCoy; and Wendy Nevels[1] as Defendants. Plaintiff is proceeding *in forma pauperis* [10], and his allegations were clarified at an Omnibus Hearing on February 20, 2025.[2]

On April 21, 2025, Defendants filed a Motion [37] for Summary Judgment for Plaintiff's Failure to Exhaust Administrative Remedies. Plaintiff did not respond, despite having a chance to do so. (Text-Only Order, Feb. 20, 2025). For the following reasons, the Motion [37] for Summary Judgment for Plaintiff's Failure to Exhaust Administrative Remedies will be granted. Plaintiff's

---

[1] Plaintiff originally sued Nevels in a separate lawsuit, raising substantially the same issues that he raises here. *Francois v. Nevels*, No. 1:24-cv-00063-RPM (S.D. Miss. Mar. 4, 2024). In the interest of judicial economy, Plaintiff agreed to voluntarily dismiss the latter-filed lawsuit, name Nevels as Defendant here, and have all related claims adjudicated at once. [36] at 10-11.

[2] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a more definite statement), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

claims against all Defendants will be dismissed without prejudice, and this case will be closed.

## I. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff was housed at JCADC beginning on January 17, 2024. [36] at 9. When he first arrived at JCADC, Plaintiff got "into an altercation" with another inmate. *Id*. at 12. As a result, Plaintiff was "classified . . . to a segregation zone" by Nevels, who is responsible for the classification of inmates. *Id*. at 12-13.

Plaintiff complains that his cell in the segregation zone "was moldy everywhere." *Id*. at 13. He claims that the racks, the shower, the floor, the table, the seats, and the toilet had "mold all over [them]." [1] at 1. He also says that Defendants refused to provide cleaning supplies. *Id*. Plaintiff remained in the moldy cell for about two days. *Id*. at 14-16.

All the while, Plaintiff claims that "there was a clean cell downstairs," but Sergeant McCoy would not move him. [3] at 7; [14] at 1. Plaintiff claims that he "had to flood the zone to be sent to isolation, so [he] could at least be in a better living condition." [3] at 7. Plaintiff sued Jackson County because it had not "corrected the mold issue." [36] at 26-27.

Plaintiff believes that he was housed like this "out of spite [for his] charge[s]," [3] at 4, which include sexual battery and lustful touching of a child, [36] at 17. As a result of the mold, Plaintiff claims that he suffered difficulty breathing, and his "chest and back hurt." [3] at 5; *see also* [1] at 1. Plaintiff made one request for medical care but failed to follow up on his request for more than a year. [36] at 32-33. Plaintiff would "like to get medically checked," [1] at 1, and to recover an unspecified measure of "money damages," [3] at 5.

**B. Defendants' Summary Judgment Evidence**

Major Jeremy Skipper, who is the Director of JCADC, testified by affidavit about the grievance procedure available to inmates at JCADC. [37-1] at 1. He "certif[ied] that the JCADC Inmate Handbook," which explains the grievance procedure, "is readily available to all inmates as the handbook is located on a kiosk present in each Day Room at the JCADC." *Id*. Attached to Major Skipper's Affidavit is a copy of the Inmate Handbook, along with "[c]opies of the [g]rievances filed on the kiosk system by [Plaintiff] . . . between January 17, 2024 and February 17, 2024." *Id.*

According to JCADC's Inmate Handbook, "[i]nmates may file a grievance when subject to a criminal act by another inmate, a prohibited act by a staff member, abuse or harassment, a violation of civil rights, or denial of common privileges without cause." [37-1] at 3. "Inmates should file these grievances by using the inmate request system," and "[t]he form should clearly describe the problem and include a detailed account of the circumstances which led to the grievance." *Id*.

This record includes five grievances that Plaintiff filed between the time he arrived at JCADC and the time he filed this lawsuit. [37-1] at 5-6. First, on January 26, 2024, Plaintiff asked whether "the dude [he] fought [had] died." *Id*. at 5. Second, on February 16, 2024, Plaintiff asked to "speak with the sheriff about how there [is] 1 zone for people with sex charges yet there are plenty of open zones that [they could] go to." *Id*. The responding officer advised that there were no "open available zones that [were] not being repaired at this time." *Id.* Third, on February 18, 2024, Plaintiff reiterated his prior complaint like this:

> hey i understand there isnt a zone that isnt being repaired but there is nothing wrong with DORM C except a tv which is fine … a2 doesnt have speakers wich is fine

3

> dorm b doesnt have a tv which is fine id rather be there and have the freedom to get to a phone 24/7…

*Id*. Fourth, on February 23, 2024, Plaintiff advised that he would "like to file a hate crime" against a guard who was "dissraspectful [*sic*] towards [him] [be]cause of [his] charges." *Id*. at 6. Finally, on February 23, 2024, Plaintiff asked to "speak with major willis" but was advised that no one by that name "works for the Sheriffs Office." *Id*.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). "In reviewing the evidence, the court must therefore refrain from making credibility determinations or weighing the evidence." *Id*. at 397-98 (quotation omitted).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id*. "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant

4

discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with significant probative evidence." *Id*. (quotation omitted).

### III. DISCUSSION

Exhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed under § 1983. *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (quotation omitted). "Exhaustion is mandatory for 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Dismissal is mandatory where an inmate has failed to properly exhaust the applicable administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir.

5

2012); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83-84. "Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement." *Evans v. Harrison Cnty. Adult Det. Ctr.*, No. 1:18-cv-00087-RHW, 2020 WL 980149, at *1 (S.D. Miss. Feb. 28, 2020). "The grievance process must be carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act," or PLRA. *Id.* A properly exhausted claim has "complete[d] the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88. Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

"The exhaustion requirement hinges on the availability of administrative remedies." *Pettis v. Hall*, No. 1:19-cv-00127-RPM, 2021 WL 785096, at *1 (S.D Miss. Mar. 1, 2021) (quotation and brackets omitted). "An inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. (quotation and brackets omitted).

Plaintiff testified that he was "familiar with the grievance process" at JCADC, [36] at 33, and the summary-judgment evidence demonstrates that he in fact filed several grievances

6

immediately before he filed this lawsuit, [37-1] at 5-6. Yet none of the grievances included in this record that Plaintiff filed in January and February 2024 had anything to do with the subject of this lawsuit—the mold in his cells. *See id*.

Plaintiff testified that the "grievance process [at JCADC] is different from the jail that they transferred [him] from," [36] at 37, but that does not demonstrate the unavailability or futility of administrative remedies for two reasons. First, Major Skipper confirmed that JCADC's Inmate Handbook (which describes the grievance procedure) "is readily available to all inmates . . . on a kiosk present in each Day Room." [37-1] at 1. "[C]ourts may not deem grievance procedures unavailable merely because an inmate was ignorant of them, so long as the inmate had a fair, reasonable opportunity to apprise himself of the procedures." *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015) (emphasis omitted). Second, Plaintiff's capacity to use the grievance process at JCADC is demonstrated by the extensive record of grievances that he actually filed. *See Siggers v. Forrest Cnty., Miss.*, No. 2:19-cv-00104-KS-MTP, 2020 WL 1886020, at *2 (S.D. Miss. Mar. 10, 2020) (finding that the plaintiff was aware of a grievance procedure because he "submitted multiple grievances" at his facility "before . . . he filed [the] lawsuit"), *report and recommendation adopted by*, 2020 WL 1881351, at *1 (S.D. Miss. Apr. 15, 2020). Five grievances appear in this summary-judgment record, [37-1] at 5-6, but counsel represented at the Omnibus Hearing that Plaintiff had by then filed 39 grievances at JCADC, [36] at 35-36.

Plaintiff filed no summary-judgment response. Thus, he has adduced no documentary evidence to show that he exhausted his administrative remedies with respect to these claims before filing this lawsuit. Plaintiff has not carried his burden as non-movant of "go[ing] beyond the pleadings and designat[ing] specific facts showing that there is a genuine issue for trial" on this

point. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "Pre-filing exhaustion is mandatory," *Gonzalez*, 702 F.3d at 788, but was not achieved in this case, so Plaintiff's claims against all Defendants must be dismissed without prejudice for failure to exhaust administrative remedies.

### IV. CONCLUSION

The Court has considered and liberally construed all pleadings, testimony, and arguments. Any not specifically mentioned herein would not have changed the outcome.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [37] for Summary Judgment for Plaintiff's Failure to Exhaust Administrative Remedies filed by Defendants Jackson County, Mississippi; Sergeant Unknown McCoy; and Wendy Nevels is **GRANTED**. Plaintiff Josemany Jean Francois' claims against all Defendants are **DISMISSED WITHOUT PREJUDICE** for his failure to exhaust administrative remedies before filing this lawsuit.

A separate final judgment will be entered under Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED,** this 13th day of February, 2026.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE